NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-4481

DERRICK BURNSIDE,

Appellant

v.

MICHAEL WENEROWICZ, Superintendent Graterford SCI;
THE ATTORNEY GENERAL OF PENNSYLVANIA-THOMAS CORBETT;
THE DISTRICT ATTORNEY OF PHILADELPHIA-SETH WILLIAMS;
THE DISTRICT ATTORNEY OF LANCASTER COUNTY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-03644)
District Judge: Honorable John R. Padova

Argued December 13, 2012

Before: AMBRO, GREENAWAY, JR., and O'MALLEY[*], Circuit Judges

(Opinion filed: May 16, 2013)

Norris E. Gelman, Esquire (Argued)
2000 Market Street, Suite 2940
Philadelphia, PA 19103

    Counsel for Appellant

_____

[*] Honorable Kathleen M. O'Malley, United States Court of Appeals for the Federal Circuit, sitting by designation.

Andrew J. Gonzalez (Argued)
Assistant District Attorney
Lancaster County Office of the District Attorney
Lancaster County Courthouse
50 North Duke Street
Lancaster, PA 17608

      Counsel for Appellees

_____

OPINION

_____

O'MALLEY, Circuit Judge

Derrick Burnside ("Burnside") was convicted in a Pennsylvania state court of second degree murder and assorted other charges. He was sentenced to life in prison without parole. The United States District Court for the Eastern District of Pennsylvania denied a petition for habeas corpus filed by Burnside, in which he alleged that the Pennsylvania trial court improperly excluded evidence from trial. For the reasons below, we affirm the district court's judgment.[1]

I. BACKGROUND

Because we write solely for the parties, we recite only the facts necessary to our decision.

On December 22, 1998, James Bell ("Bell") arrived at Burnside's house, hoping to purchase crack cocaine. Prior to December 22, Bell had acquired crack cocaine from Burnside and his associate, Eddie Vasquez ("Vasquez"), in exchange for performing

_____

[1] The district court had jurisdiction under 18 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 3742.

2

stunts. These stunts included streaking and dousing his pants with hair spray and lighting them on fire. On December 22, one of these stunts went horribly wrong.

After entering Burnside's residence, Bell proceeded to the rear of the house, where a grill and canister of lighter fluid were stored. Bell's friend, Carroll Parker ("Parker"), testified the he heard Bell say "[D]on't do that, don't do that, man, no, no, stop." J.A. 13 (Trial Tr., Testimony of Carroll Parker 143, June 7, 2004). Parker next heard "an explosion, like boof." *Id.* (Trial Tr., Testimony of Carroll Parker 144, June 7, 2004). Ten minutes later, Parker encountered Bell, Burnside, and Vasquez in the alley adjacent to Burnside's residence. Bell's legs were severely burned. Parker then saw Burnside give Bell crack cocaine and tell Bell to leave. As Bell and Parker were leaving, Bell said to Parker: "[L]ook, man, they burnt me up. They burnt me up, man." J.A. 14 (Trial Tr., Testimony of Carroll Parker 147-49, June 7, 2004).

Bell was admitted to the hospital and diagnosed with second and third degree burns covering eighteen percent of his body. On January 30, 1999, Bell died from his burns. An investigation into Bell's death revealed that an accelerant was present on his shoes consistent with his pants being doused with lighter fluid and then set on fire.

As the police continued to investigate the incident, Detective Thomas Kiss interviewed fifteen-year-old Jeffery Rodriguez ("Rodriguez"), a neighbor of Burnside. During the interview, Rodriquez explained that, on the morning of December 23, 1998, Vasquez told him: "I burned a guy last night." J.A. 52 (Lancaster Police Field Incident Report 130, Feb. 10, 2003). The Pennsylvania trial judge presiding over Burnside's trial subsequently excluded this testimony from trial on the ground that it constituted hearsay

3

under the Pennsylvania Rules of Evidence. *See* J.A. 62-63, *Pennsylvania v. Burnside*, No. 4318-2004 (Ct. C.P. Lancaster Cnty. Pa. Crim. Div. Oct. 25, 2004).

During the police investigation, numerous other witnesses provided useful testimony. For example, Michael Gantz, a fellow inmate of Burnside, testified at trial that he heard Burnside explain to a third inmate that Burnside burned Bell because Burnside was tired of Bell asking for crack. James Lilly, also an inmate, testified that Burnside told him that he abused and burned Bell in exchange for crack cocaine. Brando Beatty, Burnside's cellmate, testified that Burnside told him that Burnside and another person put lighter fluid on Bell and lit him on fire in exchange for crack cocaine. Finally, Noel Fernandez, yet another inmate, testified that Burnside laughed and joked about burning Bell while showing him a newspaper headline about the incident.

On June 10, 2004, a Pennsylvania jury found Burnside guilty of second degree murder and numerous lesser charges. For the second degree murder conviction, Burnside was sentenced to life in prison without parole.

After trial, the judge issued an opinion memorializing his ruling that the Rodriquez testimony was inadmissible. *See* J.A. 62-63, *Pennsylvania v. Burnside*, No. 4318-2004, slip op. at 9-10 (Ct. C.P. Lancaster Cnty. Pa. Crim. Div. Oct. 25, 2004). The judge reasoned that the statement potentially was allowable under the declaration against penal interest exception to the hearsay rule because it was clearly against Vasquez's interest. *Id.* at J.A. 62. The court explained, however, that Pennsylvania law requires statements against interest to be "inherently trustworthy in that they [be] written or orally made to reliable persons of authority or those having adverse interest to the declarant." *Id.* at J.A.

4

63. Applying this standard, the court determined that Rodriquez was neither a person of authority nor a person with an interest adverse to Vasquez. *Id.*

On appeal to the Pennsylvania Superior Court, a three-judge panel affirmed Burnside's sentence. But the three judges failed to reach common ground regarding Rodriquez's testimony. The first judge, Judge Del Sole, believed the trial court properly excluded the testimony under the correct legal standard, relying on a 2001 case, *Pennsylvania v. Statum*, 769 A.2d 476, 479 (Pa. Super. 2001). *See* J.A. 67, *Pennsylvania v. Burnside*, No. 1198 MDS 2004, slip op. at 4 (Pa. Super. Ct. Dec. 14, 2005). Judge Klein, in dissent, reasoned that the criteria applied by the trial court and Judge Del Sole were not the only bases for admitting evidence under the statements against interest exception to the hearsay rule. *See* J.A. 74, *Pennsylvania v. Burnside*, No. 1198 MDS 2004, slip op. at 1 (Pa. Super. Ct. Dec. 14, 2005) (Klein, J., dissenting). Citing to Pennsylvania Rule of Evidence 804(b)(3)(B), Judge Klein noted that statements against interest are admissible when there are "corroborating circumstances [that demonstrate] trustworthiness." *Id.* at J.A. 80. Judge Klein believed that sufficient corroborating circumstances were present, including, among others, the timing of the statement, that Vasquez had no reason to lie, and other corroborating testimony that Vasquez lit the fire. *Id.* at 81. And Judge Klein found the error was not harmless because the statement supports the theory that Vasquez, not Burnside, killed Bell. *Id.* at J.A. 90-91.

Finally, Judge Joyce concurred in the result reached by Judge Del Sole. Although Judge Joyce agreed with Judge Klein that the evidence was improperly excluded, Judge Joyce ultimately concluded the error was harmless. *See* J.A. 72-73, *Pennsylvania v.*

5

*Burnside*, No. 1198 MDS 2004, slip op. at 1-2 (Pa. Super. Ct. Dec. 14, 2005) (Joyce, J., concurring). Judge Joyce reasoned that the statement "does very little, if anything, to undermine the Commonwealth's claim that Vasquez and Appellant acted together." *Id.* at J.A. 73.

Following the ruling by the Superior Court, Burnside pursued several different avenues of appeal in state court and eventually exhausted his options. Burnside then filed a federal petition for writ of habeas corpus. United States Magistrate Judge Arnold C. Rapoport issued a report and recommendation ("R&R") on Burnside's petition to the presiding district judge. *Burnside v. Wenerowicz*, No. 10-3644, 2011 WL 5917234 (E.D. Pa. Sept. 29, 2011). In his report, Judge Rapoport determined that Burnside's claims are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* at *2. Under AEDPA, Judge Rapoport explained, a petitioner must demonstrate that the state court's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, established Federal law." *Id.* at *3 (citing *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001)). After finding that Burnside had exhausted his state remedies, Judge Rapoport turned to the merits. Because Burnside was objecting to an evidentiary ruling governed by state law, Judge Rapoport correctly concluded that, to prevail, Burnside would have to show that the evidentiary ruling "so infuse[d] the trial with unfairness as to deny due process of law." *Id.* at *6 (citing *Riggins v. Nevada*, 504 U.S. 127, 147 (1993) (internal quotation marks omitted)). Because he believed Burnside failed to establish that the trial court's application of the Pennsylvania Rules of Evidence rendered his trial "fundamentally unfair," Judge Rapoport recommended that Burnside's

6

petition be denied. *Id.* at *8. The presiding district court judge, Judge John R. Padova, subsequently adopted Judge Rapoports' R&R without exception. *Burnside v. Wenerowicz*, No. 10-3644, 2011 WL 5920473, at *1 (E.D. Pa. Nov. 22, 2011). This appeal followed.

## II. STANDARD OF REVIEW

We exercise plenary review over the merits of a district court's decision on a habeas petition where, as here, the court held no evidentiary hearing. *See Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir. 2005). We review de novo a district court's legal conclusion that the deferential standard of review outlined in the AEDPA, as opposed to the less deferential pre-AEDPA standard, applies to a petition. *See Hackett v. Price*, 381 F.3d 281, 287 (3d Cir. 2004).

A predicate question the parties debate is which state court ruling is the object of our review—that of the trial court or the appellate court. "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Difficulties arise when the pertinent appellate decision is fractured, with no ground for the disposition receiving majority support, making it impossible to ascertain a single rationale for the decision. *See id.* at 232. But "the fact that the [appellate court's] result was supported by multiple lines of reasoning does not allow us to deem it 'unreasoned' and look past it to the decision of the [trial] court." *Id.* We review the appellate court decision, not the trial court decision, as long as

the appellate court "issued a judgment, with explanation, binding on the parties before it."

*Id.*

## III. DISCUSSION

We first address the standard of review applicable to Burnside's habeas petition. Our standard of review depends on whether Burnside's claim (i.e., that the Rodriguez testimony was erroneously excluded) was adjudicated on the merits by the Pennsylvania Superior Court. If it was, we apply the deferential review dictated by the AEDPA.[2] If not, we employ the less deferential pre-AEDPA standard, under which we review pure legal questions and mixed questions of law and fact de novo. *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). As noted above, the lower court concluded that the governing standard of review was that contained in the AEDPA.

Under the AEDPA, a decision is on the merits when "it is a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Simmons*, 590 F.3d at 232 (internal quotation marks omitted). The Pennsylvania Superior Court affirmed the trial court's exclusion of the statement on two separate grounds: Judge Del Sole found no error in the trial judge's application of the rules of evidence and Judge Joyce found that the trial court erred but the error was harmless. Since there is no majority consensus on the rationale for affirming, Burnside contends his claim was never actually adjudicated

---

[2] Under the AEDPA's deferential standard, we review a state court decision to determine if it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We must presume that the state court's factual findings were correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence. *Id.* § 2254(e)(1).

on the merits and that we, accordingly, should review the state court's ruling without deference.

While the parties expend substantial energies debating the level of deference we should afford the state court decision in this case, we decline to resolve that debate. We hold that, even if we assume the state courts misapplied the evidentiary rules governing the admissibility of Rodriguez's testimony, that legal error did not render Burnside's trial fundamentally unfair. On the record presented, there was overwhelming evidence of Burnside's involvement in Bell's death. Rodriguez's testimony would not have altered that landscape materially, and certainly not to the level necessary to give rise to a due process violation. *See Geschwendt v. Ryan*, 967 F.2d 877, 888-89 (3d Cir. 1992) ("[I]t is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

Burnside was convicted of second degree murder under 18 Pa. Cons. Stat. Ann. § 2502(b). Section 2502(b) provides that "[a] criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an *accomplice* in the perpetration of a felony." 18 Pa. Conn. Stat. Ann. § 2502(b) (emphasis added). Taken in the light most favorable to Burnside, Rodriguez's testimony raises questions about who lit the fire that killed Bell. The statement is not an exculpation of Burnside; it is wholly consistent with the Commonwealth's theory that Burnside and Vasquez acted together.

9

The Commonwealth adduced substantial evidence showing that Burnside was involved in Bell's death and was, at a minimum, an accomplice therein. This evidence included testimony of Bell's friend, Parker, that: (1) placed Burnside at the scene of the crime; (2) recounted statements by Bell that "they" burned him; and (3) indicated that Burnside gave Bell crack cocaine and told him to "get out of [his] face." J.A. 13 (Trial Tr., Testimony of Carroll Parker 147-48, June 7, 2004). The Commonwealth also provided numerous witnesses who testified that Burnside bragged about burning Bell and revealed details relating to his actions on December 22, 1998. Given this evidence, Rodriguez's testimony, even if admitted, would not have affected the conviction of second degree murder and sentence of life in prison without parole. Accordingly, even if we assume the trial court erred by excluding Rodriguez's testimony, the purported error did not violate Burnside's due process right to a fair trial. *See Riggins v. Nevada*, 504 U.S. 127, 147 (1992) ("[T]his Court may not reverse a state trial judge's action in the admission of evidence unless the evidentiary ruling so infuses the trial with unfairness as to deny due process of law." (internal quotation marks omitted)).

## III. CONCLUSION

For these reasons, we affirm the district court's denial of Burnside's petition.